Tom WRIGHT, d/b/a Easter
& Associates, Plaintiff,

v.

James F. BUTTS, et al., Defendants.

Civil Action No. 94–D–1602–N.

United States District Court,
M.D. Alabama,
Northern Division.

July 31, 1996.

Tom Wright, Montgomery, AL, pro se.

Jack Franklin, Northn, Jerry L. Weidler, Alabama Dept. of Transportation, Montgomery, AL, Janie B. Clarke, Edward M. George, Harry A. Lyles, Jeffery Foshee, Montgomery, AL, for defendants.

### MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is the motion to dismiss or, in the alternative, motion for summary judgment filed by the State of Alabama Department of Transportation; James F. Butts, Director of the State of Alabama Department of Transportation; Ray Bass, Preconstruction Engineer for the State of Alabama Department of Transportation; T.D. Lenoir, Assistant Chief of Design Bureau for the State of Alabama Department of Transportation; Roy Keen, an Auditor for the State of Alabama Department of Transportation; Roy Hale, an Auditor for the State of Alabama Department of Transportation; Ronald J. Green, the Human Resources Coordinator for the State of Alabama Department of Transportation; and Fob James, the Governor of the State of Alabama (collectively referred to as the "State defendants").[1] After careful consideration of the arguments of the parties, the relevant case law and the evidence, the court finds that the state defendants' motion is due to be granted in part and denied in part.

### JURISDICTION AND VENUE

Based upon 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343 (civil rights jurisdiction), the court properly exercises subject matter jurisdiction over this action. The parties do not contest personal jurisdiction or venue.

---

1. When the movant submits a 12(b)(6) motion to dismiss, as here, and "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56...." Fed.R.Civ.P. 12(b). Because the court has considered matters outside the pleadings, it will treat the defendants' motion as one for summary judgment.

## STANDARD OF REVIEW

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *see also Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–53. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Id.; see also Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510–11.

## FINDINGS OF FACT

■ Plaintiff Tom Wright ("plaintiff"), who is proceeding *pro se*, commenced this action on December 14, 1994.[2] The plaintiff, a black male, alleges that based upon his race, the State of Alabama Department of Transportation and various state and federal officials deprived him of an equal opportunity in contracting with the State of Alabama Department of Transportation, in violation of (1) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*; (2) Title VI of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000d *et seq.*; (3) the

---

2. While the allegations in the complaint are somewhat muddled, the court recognizes that *pro se* complaints are subject "... 'to less stringent standards than formal pleadings drafted by lawyers....'" *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980). Accordingly, the court generously has construed the allegations contained in the complaint. *See* Fed. R.Civ.P. 8(f) (providing that "[a]ll pleadings shall be so construed as to do substantial justice"); *Farred v. Hicks*, 915 F.2d 1530, 1533 (11th Cir. 1990); *see generally Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Fourteenth Amendment to the United States Constitution, as enforced by 42 U.S.C. § 1983; (4) 42 U.S.C. § 1981; and (5) 42 U.S.C. § 1985(3). The plaintiff seeks compensatory and punitive damages, as well as injunctive and declaratory relief.

The plaintiff has sued the following defendants: James F. Butts, individually and in his official capacity as the Director of the State of Alabama Department of Transportation; Ray Bass, individually and in his official capacity as Preconstruction Engineer for the State of Alabama Department of Transportation; T.D. Lenoir, individually and his official capacity as Assistant Chief of Design Bureau for the State of Alabama Department of Transportation; Roy Keen and Roy Hale, individually and in their official capacities as auditors for the State of Alabama Department of Transportation; Ronald J. Green, individually and in his official capacity as the Human Resources Coordinator for the State of Alabama Department of Transportation; Fob James, individually and in his official capacity as Governor of the State of Alabama; Joe D. Wilkerson, individually and in his official capacity as the Division Administrator for the Alabama Division of the Federal Highway Administration, United States Department of Transportation; and Frederico F. Pena, sued individually and in his official capacity as the Secretary of the United States Department of Transportation.[3]

■ The facts that form the basis of the plaintiff's racial discrimination claims are as follows: The plaintiff asserts that, on behalf of Easter & Associates, he submitted a proposal to the Consultant Selection Committee of the State of Alabama Department of Transportation to perform survey work.[4] See Pl.'s Compl. at ¶ 18.[5] On April 5, 1993, after assessing the qualifications and availability of Easter & Associates, the State of Alabama Department of Transportation selected Easter & Associates to perform survey work in the Sixth Division. Id. This was Easter & Associates first contract with the State of Alabama Department of Transportation. Easter & Associates was approved for non-federal participation work only. Subsequently, the State of Alabama Department of Transportation performed an audit of Easter & Associates to establish the rates to be paid under the contract. Id. at ¶ 19; see also "Amendment" to Mot. for Sum. J., filed Feb. 14, 1995, Ex. A attached thereto (Pl.'s EEOC charge). According to the plaintiff, Mr. Keen informed the plaintiff and one of the plaintiff's employees that his audited review indicated that the plaintiff's hourly rate would be set at $110 per hour. Pl.'s Compl. at ¶ 19. However, when the plaintiff received the contract on June 22, 1993, the hourly rate stated therein was $47.93. Id.; see also "Amendment" to Mot. for Sum.J., filed Feb. 14, 1995, Ex. A attached thereto (Pl.'s EEOC charge). According to the plaintiff, Mr. Hale also was involved in conducting the audit of Easter & Associates. Pl.'s Compl. at ¶ 8.

Subsequently, the plaintiff asserts that he visited Mr. Lenoir and inquired about what he believed was an inordinately low contract rate. Id. at 32. The plaintiff states that Mr. Lenoir told him, in sum, that there was nothing he could do to change the rate and that the plaintiff would have to consult with the auditors. Id. The plaintiff further asserts that Mr. Lenoir told him that, to his knowledge, the hourly rate awarded to the plaintiff was the lowest rate ever received by a company which had contracted with the State of Alabama Department of Transportation. Id.

The plaintiff next approached Mr. Keen, who told him that he would have to speak

---

3. All the state and federal individual defendants are white. The federal defendants also filed a motion for summary judgment, which was granted in a separate memorandum opinion and order.

4. The plaintiff owns Easter & Associates, which is an engineering and consulting firm. Easter & Associates is a minority-owned company employing predominantly black employees. Pl.'s Compl. at ¶ 19.

5. Attached to the complaint is the plaintiff's affidavit, certified by a notary public, wherein the plaintiff states that the allegations in the complaint are "true and correct." Thus, in ruling on the defendants' motion for summary judgment, the court has considered the complaint as evidence in opposition to summary judgment. See Fed.R.Civ.P. 56.

with Mr. Hale regarding any changes in the audit. *Id.* at 33. The plaintiff further asserts that Mr. Keen told him that Mr. Hale instructed Mr. Keen to "lower the rates he arrived at as a result of his audit." *Id.* at ¶ 20. Mr. Hale, however, told the plaintiff that "that's the way it is," and there was nothing he could do to change the audit. *Id.* at 33. The plaintiff also sought assistance from Mr. Green, who told the plaintiff that he would need to speak with the Director of the State of Alabama Department of Transportation. *Id.* at ¶ 34.

The plaintiff further states that "based upon information and belief, ... Easter & Associates is the only black engineering and consulting firm which has ever been offered any consulting work for the Highway Department." *Id.* at ¶ 21. This statement is unrebutted. The plaintiff also has submitted documents of audits conducted by officials of the State of Alabama Department of Transportation. These audits are of white companies, which performed similar contract work, and reveal a higher hourly rate than that awarded to the plaintiff. The plaintiff asserts that the basis for the low rate is that Easter & Associates is a company consisting primarily of minority employees and that the defendants acted with a discriminatory intent in awarding Easter & Associates a contract rate less than those contract rates awarded to similarly-situated white companies.

Mr. Keen asserts that he is the only defendant in this action who "assisted or participated" in the audit of Easter & Associates. Keen's Aff. at ¶ 3, filed Jan. 17, 1995. About the audit, Mr. Keen states as follows:

> At the time of the audit on June 8, 1993, the plaintiff could not provide to me any payroll information so that the calculations could be made concerning the fee rate. At that time I informed [the plaintiff] and [the plaintiff's co-employee] of the method of calculating the fee for illustration and example only....
>
> Thereafter, on June 10, 1993, ..., [the plaintiff's co-employee,] whom I knew to be associated with [the plaintiff,] delivered to me a copy of what he represented to me to be his hourly rate for employees. I

used this document to calculate the fee rate of $47.93.

. . . . .

*Id.* at ¶¶ 4–5 (brackets supplied). Mr. Keen further states that "the method of calculating the fee rate conducted in this audit was the same method and manner used in all audits and nothing different was done pursuant to [his] audit of plaintiff's application than any other." *Id.* at ¶ 6 (brackets supplied).

## DISCUSSION

### I. Review by the Chief External Auditor

█ The state defendants assert that, on several occasions, the plaintiff was informed by various state officials that he could request reconsideration of the hourly rate by the Chief External Auditor. The state defendants further contend that the plaintiff did not follow through with this administrative negotiation process but instead filed this action. As a result, the state defendants urge the court to dismiss the complaint as "untimely" or "moot" and assert that "the plaintiff has suffered no harm or injury and still is entitled to his administrative recourse." Def.s' Mot. to Dismiss, filed Jan. 17, 1995. The court knows of no requirement under any of the federal statutes at issue which requires the plaintiff to seek reconsideration from the Chief External Auditor before he may file a lawsuit. Hence, the court finds that the plaintiff is entitled to immediate and direct access to federal court notwithstanding his failure to seek reconsideration of the hourly rate by the Chief External Auditor. Accordingly, the state defendants' motion for summary judgment on this ground is due to be denied.

### II. Eleventh Amendment Immunity 42 U.S.C. §§ 1981, 1983 & 1985(3)

█ The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens of Subject or any Foreign State." U.S. Const. Amend. 11. The Eleventh Amendment defines the initial parameters of the court's

jurisdiction over the plaintiff's §§ 1981, 1983 and 1985(3) claims. Because assertions of immunity under the Eleventh Amendment raise issues concerning subject matter jurisdiction, *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 99 n. 8, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984), an Eleventh Amendment claim may be raised at any time. *Id.;* Fed.R.Civ.P. 12(h)(3). Hence, the court finds that the state defendants have timely raised this defense by motion for summary judgment.

## A. State of Alabama Department of Transportation

■ Generally, the Eleventh Amendment is a complete bar to lawsuits brought in federal court against a state or state agency by individuals. *Halderman,* 465 U.S. at 98–100, 104 S.Ct. at 906–08 (Eleventh Amendment bar to suit against state and state agencies applies "regardless of the nature of the relief sought."). *See Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974). An individual may, however, bring suit if the state unequivocally has waived its immunity or if congressional legislation under § 5 of the Fourteenth Amendment operates as a waiver of the Eleventh Amendment's protection.[6] *Kennecott Copper Corp. v. State Tax Com'n,* 327 U.S. 573, 577, 66 S.Ct. 745, 746–47, 90 L.Ed. 862 (1946); *Hutto v. Finney,* 437 U.S. 678, 693, 98 S.Ct. 2565, 2574–75, 57 L.Ed.2d 522 (1978) (citation omitted).

■ Neither the State of Alabama nor Congress has waived Eleventh Amendment immunity under §§ 1981, 1983 or 1985(3); therefore, the aforementioned exceptions do not apply. *Carr v. City of Florence, Ala.,* 916 F.2d 1521, 1524–25 (11th Cir.1990) (Exceptions to Eleventh Amendment immunity do not apply in § 1983 actions.); *Sessions v. Rusk State Hosp.,* 648 F.2d 1066, 1069 (5th Cir. Unit A 1981) (holding that the Eleventh Amendment applies in § 1981 litigation); *Fincher v. Florida Dep't of Labor & Employment Sec. Unemployment Appeals Comm'n,* 798 F.2d 1371, 1372 (11th Cir.1986), *cert. denied,* 479 U.S. 1072, 107 S.Ct. 1262, 94 L.Ed.2d 124 (1987) (finding "no express congressional abrogation of the state's Eleventh Amendment immunity with respect to 42 U.S.C. § 1985 actions"). Because the State of Alabama Department of Transportation is an agency of the State of Alabama, the court finds that the Eleventh Amendment protects it from all liability under §§ 1981, 1983 and 1985(3). *See* Ala.Code § 23–1–20 (1975) (creating the State of Alabama Department of Transportation). Accordingly, the state defendants' motion for summary judgment is due to be granted as to the §§ 1981, 1983, and 1985(3) claims asserted against the State of Alabama Department of Transportation.

## B. State Defendants Sued in Their Official Capacities

■ The Eleventh Amendment also prohibits the plaintiff's §§ 1981, 1983 and 1985(3) action seeking compensatory and punitive damages against the state defendants sued in their official capacities. *See Edelman,* 415 U.S. at 662–63, 94 S.Ct. at 1355–56. In *Carr,* the Court of Appeals for the Eleventh Circuit held that "[l]awsuits against a state official in his or her official capacity are suits against the state when 'the state is the real, substantial party in interest.'" 916 F.2d at 1524 (*quoting Halderman,* 465 U.S. at 101, 104 S.Ct. at 908). When a plaintiff seeks monetary relief from a state employee in his or her official capacity, as here, "the state is considered the real party in interest because an award of damages would be paid by the state." *Id.* (citation omitted). Accordingly, summary judgment is due to be granted on the plaintiff's §§ 1981, 1983 and 1985(3) claims for compensatory and punitive damages against the state officials sued in their official capacities. *See Gorman v. Roberts,* 909 F.Supp. 1493, 1502–03 (M.D.Ala. 1995).

■ In interpreting the Eleventh Amendment, courts distinguish between suits against a state or state agency and those

---

**6.** Section five of the Fourteenth Amendment authorizes Congress to override Eleventh Amendment immunity to the extent necessary to enforce legislation designed to implement the substantive provisions of the Fourteenth Amendment. *Fitzpatrick v. Bitzer,* 427 U.S. 445, 456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976).

against state employees. When federal rights are asserted against state employees sued in their official capacities, the Eleventh Amendment prohibits claims for retrospective monetary relief (i.e., compensatory and punitive damages) paid from the state treasury but not prospective equitable relief (i.e., declaratory and injunctive relief). *See Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) (holding that a plaintiff seeking prospective relief from the state must name as a defendant a state official rather than the state or a state agency directly even though in reality the suit is against the state). Hence, the plaintiff's §§ 1981, 1983 and 1985(3) claims for injunctive and declaratory relief against the state defendants sued in their official capacities is proper and summary judgment on this ground is due to be denied.

### III. Qualified Immunity and 42 U.S.C. § 1983

Under 42 U.S.C. § 1983, the plaintiff also seeks to hold the state defendants liable for monetary damages in their individual capacities. The state defendants contend that, in their individual capacities, they are immune from damages under the well-established doctrine of qualified immunity. The plaintiff can avoid summary judgment by showing that the state defendants are not entitled to qualified immunity as a matter of law or that genuine issues of material fact exist so that the question of whether the state defendants are entitled to qualified immunity is only properly determined after findings of fact have been made by the jury. *Rich v. Dollar,* 841 F.2d 1558, 1562 (11th Cir.1988).

The Supreme Court of the United States has held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73

L.Ed.2d 396 (1982); *see also Rich,* 841 F.2d at 1563. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

The test for whether a governmental defendant is entitled to qualified immunity from liability in his or her individual capacity involves a two-step analysis. A government official first must demonstrate that " 'he [or she] was acting within the scope of his [or her] discretionary authority when the allegedly wrongful acts occurred.' " *Rich,* 841 F.2d at 1563–64 (quoting *Zeigler v. Jackson,* 716 F.2d 847, 849 (11th Cir.1983)). If the defendant satisfies this burden, the plaintiff must show either that the official's actions " 'violated clearly established constitutional law' " or a federal statute. *Id.*

The court now will address the first prong of the *Zeigler* inquiry. The evidence is undisputed that any decisions regarding the selection of the plaintiff's firm as a contractor or any decisions concerning the audit procedure were made by the state defendants while acting within their discretionary authority. Hence, the court finds that the state defendants' actions were undertaken pursuant to the performance of their duties and were within the scope of their discretionary authority. *See Hutton v. Strickland,* 919 F.2d 1531, 1536 (11th Cir.1990).

Under the second prong, the court must determine whether the applicable law was clearly established at the time of the challenged action. This is determined by reference to decisions of the Supreme Court of the United States, the Court of Appeals for the Eleventh Circuit and, in this case, the Supreme Court of Alabama. *D'Aguanno v. Gallagher,* 50 F.3d 877, 881 n. 6 (11th Cir. 1995); *Courson v. McMillian,* 939 F.2d 1479, 1498 n. 32 (11th Cir.1991). The relevant inquiry is "fact specific," *Rodgers v. Horsley,* 39 F.3d 308, 311 (11th Cir.1994) (De Ment, J.),[7] and the plaintiff must point to a control-

---

7. In *Rodgers,* the Eleventh Circuit reversed this court's order denying the defendants qualified immunity on a motion for summary judgment. The Eleventh Circuit's inquiry in that case dem-

onstrates the factual depth required for determining whether the law was clearly established:

The question in this case is not whether, in general, involuntarily committed patients have

**1360**

ling case, decided before the events at issue, that establishes a constitutional violation on "materially similar" facts. *Lassiter v. Alabama A & M Univ., Bd. of Trustees,* 28 F.3d 1146, 1150 (11th Cir.1994). As emphasized in *Lassiter,* "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violated federal law in the circumstances." *Id.; see also Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) (holding that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right").

**A. Deprivation of a Constitutional Right**

The Supreme Court of the United States has stated that "[a] necessary concomitant to the determination of whether the constitu-

tional right or federal statutory right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). Thus, in following the instructions in *Siegert,* the court will first determine whether the plaintiff has asserted a constitutional *violation* before delving into the qualified immunity analysis.[8] *See Tinney v. Shores,* 77 F.3d 378, 381 (11th Cir.1996) (citing *Wooten v. Campbell,* 49 F.3d 696, 699 (11th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 379, 133 L.Ed.2d 302 (1995)); *Jordan v. Doe,* 38 F.3d 1559, 1564 (11th Cir.1994).

 The plaintiff contends that the state defendants violated his rights under the Fourteenth Amendment, as enforced by 42 U.S.C. § 1983.[9] While not clearly pleaded in

a legally cognizable interest under the Fourteenth Amendment to safe conditions. They do. Instead, the question in this case, as in all qualified immunity cases, is fact specific: in May 1991, was it clearly established in this circuit that it was unconstitutional for a mental institution to fail to supervise a patient for fifteen minutes in the smoking room when she was on close watch status for a health problem, when the institution had a history of some "sexual contact" involving patients other than plaintiff but no history of rape for the past twelve years, where a previous patient who was to be similarly monitored disappeared, apparently escaped through a bathroom window, and fell to her death on a ledge below, and where the plaintiff had never before complained of unwanted sexual contact from either the patient accused, any other patient, or any member of the staff? The answer is "NO." *Id.* at 311.

8. The court notes that, in this circuit, it may in some instances no longer be necessary to answer this inquiry. In a recent case, the Eleventh Circuit diverged from the *Siegert* order of analysis and stated that "we now think it enough to decide that there was no *clearly established* constitutional right allegedly violated by the defendants." *Spivey v. Elliott,* 41 F.3d 1497, 1498 (11th Cir.1995) (italics added). There, the panel decided *sua sponte* to reexamine if *Siegert, supra,* required it to first determine "whether the violation of a constitutional right had been alleged" or whether it was sufficient to only decide "that there was no 'clearly established' constitutional right alleged." *Id.* at 1498.

The panel stated that, in that case, further analysis regarding the substantive right alleged

would be "expensive" and burdensome to the parties: "Once there has been a determination that there is no 'clearly established' right, the parties can accomplish little in pursuing the question of whether there is a right at all. The same parties will win and the same parties will lose regardless of the court's decision on that point." *Id.* at 1498–99. The panel further reasoned that

in the interest of efficiency and collegiality on this Court, where there are differing views as to the substantive right, this panel has chosen to withdraw all of its prior opinion which relates to whether the complaint alleges a constitutional right so that the opinion will serve as no precedent on that issue.

*Id.* at 1499. In so deciding, however, the panel was careful not to establish precedent: In addition to stating that "[t]hose who differ with the decision ... could write it off as dictum," the panel emphasized that its decision in no way precludes a court, if deemed appropriate, from first determining whether a plaintiff has asserted the violation of a constitutional right. *Id.*

9. Section 1983 creates a mechanism for recovering monetary damages and injunctive relief from governmental actors and entities whose actions under color of state or local law deprive a plaintiff of rights, privileges or immunities secured by the United States Constitution or federal statutes. Thus, § 1983 " 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.' " *Albright v. Oliver,* 510 U.S. 266, 271, 114 S.Ct. 807, 811, 127 L.Ed.2d 114 (1994) (citations omitted).

the complaint, the plaintiff's § 1983 claim appears to be premised upon a violation of rights secured by the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause guarantees to each individual the right to equal treatment in the exercise of his or her fundamental rights and the right to be free from classifications based on impermissible criteria. *See Johnson v. City of Tarpon Springs,* 758 F.Supp. 1473, 1480–81 (M.D.Fla.1991); *see also Bass v. City of Albany,* 968 F.2d 1067, 1070 (11th Cir.1992). Additionally, "proof of discriminatory purpose is required to show a violation of the equal protection clause." *Jones v. Board of Com'rs of Alabama State Bar,* 737 F.2d 996, 1003 (11th Cir.1984) (citation omitted). In order to prove a violation of the equal protection clause, the plaintiff "must show that the challenged action was 'taken at least in part' because of, not 'in spite of,' its adverse effects upon an identifiable group." *Personnel Administrator of Massachusetts v. Feeney,* 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979); *Jones,* 737 F.2d at 1004 (citation omitted).

Here, the plaintiff asserts that, in conducting audits for contract work, the state defendants treated other similarly-situated white contractors differently by awarding them higher hourly contract rates. *See Wulf v. City of Wichita,* 644 F.Supp. 1211 (D.Kan. 1986), *aff'd in part and rev'd in part,* 883 F.2d 842 (10th Cir.1989) (stating that "[t]he Equal Protection Clause only guarantees like treatment to persons similarly situated") (citing *Rostker v. Goldberg,* 453 U.S. 57, 79, 101 S.Ct. 2646, 2659, 69 L.Ed.2d 478 (1981)). The court finds that the plaintiff has raised a disputed issue of fact as to whether the state defendants acted with a discriminatory purpose in awarding the contract to the plaintiff at a hourly fee of $47.93. The plaintiff's unrebutted evidence reveals that his company is the only minority-owned company ever awarded a contract for survey work by the State of Alabama Department of Transportation and that the hourly rate the plaintiff's firm received is the lowest ever received by a contract awardee.

In essence, the plaintiff's argument is as follows: Based upon Mr. Keen's statement that Mr. Hale told him to lower the audited rate from $110.00 to $47.93 and the plaintiff's efforts to have the audit changed or reassessed, one could reasonably infer that the alleged disparity between the hourly rate awarded his firm and that awarded to similarly-situated white companies is the result of race discrimination. On the other hand, Mr. Keen has asserted that he conducted the audit of the plaintiff's firm in the exact same manner as he conducts all audits. Whether Mr. Keen's version or the plaintiff's version more likely occurred is a question for the trier of fact at the trial on the merits. In other words, if the trier of fact finds more credible the plaintiff's version of the events, then the plaintiff would be entitled to relief under § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment.

### B. Qualified Immunity Principles

Now, the court must analyze the plaintiff's equal protection claim, as enforced by § 1983, in the context of qualified immunity. As previously stated, to attach individual liability to the state defendants, the plaintiff must prove that the defendants "violated not only a constitutional right, but a 'clearly established' constitutional right." *Hamilton v. Cannon,* 80 F.3d 1525, (11th Cir.1996).

#### 1. Governor Fob James

The plaintiff does not cite, nor has the court found, any controlling case law that clearly establishes the law in regard to the plaintiff's § 1983 claim asserted against Governor Fob James. In fact, the record does not contain any inferable facts that Governor Fob James participated in any activity relevant to the events underlying the plaintiff's equal protection claim or that he had either actual or constructive knowledge of said events. In other words, the court cannot ascertain from the complaint how Governor Fob James is involved in the alleged scheme of liability; hence, the court finds that the plaintiff has failed to "connect" an equal protection violation to this defendant. *Caldwell v. City of Elwood,* 959 F.2d 670, 672 (7th Cir.1992) (quoting *Brownlee v. Conine,* 957 F.2d 353, 354 (7th Cir.1992)) (holding that "[a] civil rights complaint must outline a vio-

lation of the constitution or a federal statute 'and connect the violation to the named defendants' "). Because there is no causal connection between Governor Fob James and the alleged discriminatory acts, the court finds that, under § 1983, he is entitled to qualified immunity in his individual capacity.

### 2. Butts, Bass, Lenoir, Green, Keen and Hale

■ Defendants Butts, Bass, Lenoir, Green, Keen and Hale are all employees of the State of Alabama Department of Transportation. According to the plaintiff, these state defendants are the ones who actively participated in the determination of the hourly rate under the plaintiff's contract and/or refused to assist the plaintiff in reviewing or changing the contract rate. The plaintiff further asserts that their decision to set the contract rate at $47.93 was based upon race considerations. The state defendants' brief is silent regarding which individuals possessed the authority to establish and/or reassess the contract rate; thus, their brief is of no help to the court. Hence, in construing the evidence in the light most favorable to the nonmoving party, the court infers that Butts, Bass, Lenoir, Green, Keen and Hale possessed the authority either to establish a contract rate or to review and direct a second audit.

■ It is clear that in 1993, when the audit was performed, the Eleventh Circuit had determined that the equal protection right to be free from racial discrimination was "clearly established." *Brown v. City of Fort Lauderdale,* 923 F.2d 1474, 1478 (11th Cir.1991) (citing *Washington v. Davis,* 426 U.S. 229, 239–41, 96 S.Ct. 2040, 2047–48, 48 L.Ed.2d 597 (1976)). Moreover, the court finds that it is "patently obvious" that a state cannot award a contractor a lower contract rate than similarly-situated white contractors on the basis of race. *Smith v. Lomax,* 45 F.3d 402, 406 (11th Cir.1995).

Hence, if, as the plaintiff alleges, Keen and Hale established the plaintiff's hourly contract rate at $47.93 and Butts, Bass, Lenoir and Green refused to assist the plaintiff by reviewing said contract rate, all because the plaintiff is black and owns a majority-black company, they unquestionably would not be immune from civil liability in their individual capacities. At this stage of the proceedings, the court finds that disputed issues of fact preclude the entry of summary judgment on the issue of race discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment. Accordingly, these state defendants' motion for summary judgment on the basis of qualified immunity is due to be denied at this time.

### IV. Title VII

■ The state defendants assert that the plaintiff's Title VII claim is due to be dismissed on the ground that the plaintiff failed to exhaust his administrative remedies. *See* Def.s' "Amendment" to Mot.Summ.J., filed Feb. 14, 1995. Specifically, the state defendants contend that the plaintiff has not received a right-to-sue letter from the EEOC. Exhausting administrative remedies is a jurisdictional prerequisite to filing suit in federal court. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 798, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973). Courts have jurisdiction over Title VII claims only after a plaintiff (1) timely files a charge of employment discrimination with the EEOC and (2) files suit within ninety days of the receipt of the EEOC's statutory notice of right to sue.[10] *Id.; see also Reeb v. Economic Opportunity Atlanta,* 516 F.2d 924 (5th Cir.1975).

On December 8, 1993, the EEOC received the plaintiff's charge of race discrimination, wherein the plaintiff alleged the denial of rights under Title VII. On April 30, 1994, the EEOC issued a right-to-sue letter and contemporaneously dismissed the plaintiff's charge on the basis that Title VII, which protects against discrimination in employment, did not apply to the plaintiff because

---

**10.** Once an aggrieved party has received a right-to-sue notice from the EEOC, the party has ninety days to bring a civil action against the respondent named in the charge. 42 U.S.C. § 2000e–5(f)(1). The ninety-day time frame is jurisdic-

tional, and with a few exceptions not relevant here, the ninety-day period begins to run from the date the plaintiff receives the notice. *See Goldsmith v. City of Atmore,* 996 F.2d 1155, 1160 (11th Cir.1993).

he was an "independent contractor," not an "employee." On July 28, 1994, however, the EEOC issued a notice of intent to reconsider, revoked the right-to-sue letter dated April 30, 1994, and reopened the investigation of the allegations asserted in the plaintiff's charge of race discrimination.

While not in the record, Mr. Noah Carter, an investigating officer with the EEOC, informed the court on June 17, 1996, that the EEOC issued the plaintiff a second notice of dismissal and right-to-sue letter on September 16, 1994, which the plaintiff received on September 20, 1994. The plaintiff then filed his complaint on December 20, 1994. Because the plaintiff filed his complaint within ninety days of receiving the second right-to-sue letter the court finds that the plaintiff has satisfied Title VII's administrative prerequisites to filing suit in federal court. Accordingly, the state defendants' motion for summary judgment is due to be denied on this ground. The plaintiff, however, is directed to file with the court on or before August 9, 1996, the second right-to-sue letter, and, if he fails to do so, the court will entertain from the state defendants a motion to dismiss on the limited ground that the plaintiff has failed to submit any evidence indicating that he has fulfilled the administrative prerequisites to filing a Title VII action in federal court.

The court notes that it questions whether the plaintiff and State of Alabama Department of Transportation's working relationship is covered by Title VII. Title VII's protections against discrimination cover only prescribed actions by an "employer," "employment agency" or "labor organization." 42 U.S.C. § 2000e–2. Hence, the issue is whether the plaintiff is an independent contractor or an employee. *See generally Cobb v. Sun Papers, Inc.*, 673 F.2d 337 (11th Cir.), *cert. denied*, 459 U.S. 874, 103 S.Ct. 163, 74 L.Ed.2d 135 (1982). Because resolution of this issue involves a balancing of factors under "common law concepts," *id.* at 341, it is doubtful that the issue could be decided on summary judgment, even if the court were to grant the parties leave to file an out-of-time motion for summary judgment on this issue (which the court will not do at this late date).[11]

### V. Title VI

The state defendants have not moved for summary judgment on the plaintiff's claim brought under Title VI of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000d–2000d–4.[12] Thus, this action proceeds as to the Title VI claim. The court notes that contrary to Title VII, Title VI does not contain a requirement that a plaintiff first exhaust administrative remedies before filing suit. *Cone Corp. v. Florida Dept. of Transp.*, 921 F.2d 1190, 1200 n. 30 (11th Cir.), *cert. denied*, 500 U.S. 942, 111 S.Ct. 2238, 114 L.Ed.2d 479 (1991) (citations omitted); *see also Doe v. Garrett*, 903 F.2d 1455, 1460 (11th Cir.1990) ("[I]t is established, as a general matter, that Title VI ... does not incorporate Title VII's requirement of exhaustion of administrative remedies").

**11.** The Eleventh Circuit has established several factors relevant to the issue of whether a party is an employee or independent contractor:

> (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated, i.e., by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "em-

> ployer"; (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays Social Security taxes; (11) the intention of the parties.

*Cobb v. Sun Papers, Inc.*, 673 F.2d 337, 340 (11th Cir.1982) (holding that a janitor/custodian was an independent contractor and, therefore, not entitled to protection of Title VII).

**12.** Title VI is aimed at eliminating discrimination against racial and ethnic minorities in programs that receive federal funds and provides, in part, as follows: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

## VI. Summary

In sum, the court finds that: (1) The plaintiff is not required to request reconsideration of the hourly contract rate by the Chief External Auditor before filing a lawsuit in federal court; (2) the State of Alabama Department of Transportation's motion for summary judgment on the claims asserted under §§ 1981, 1983 and 1985(3) is due to be granted pursuant to the Eleventh Amendment to the United States Constitution; (3) the state defendants' motion for summary judgment on the §§ 1981, 1983 and 1985(3) claims asserted against them in their official capacities for monetary damages is due to be granted pursuant to the Eleventh Amendment to the United States Constitution; (4) the plaintiff's §§ 1981, 1983 and 1985(3) claims for injunctive and declaratory relief against the state defendants sued in their official capacities remains viable; (5) in his individual capacity, Governor Fob James is entitled to summary judgment on the ground that qualified immunity protects him from personal liability under § 1983; (6) in their individual capacities, defendants James F. Butts, Ray Bass, T.D. Lenoir, Ronald J. Green, Roy Keen and Roy Hale are not entitled to summary judgment on qualified immunity grounds; (7) the state defendants are not entitled to summary judgment on their argument that the plaintiff failed to satisfy all administrative prerequisites before filing suit under Title VII; thus, the Title VII claim remains viable; and (8) there being no challenge to the plaintiff's Title VI claim, this action likewise proceeds as to the Title VI claim.[13]

### ORDER

For the reasons stated herein, it is CONSIDERED and ORDERED as follows:

(1) that the state defendants' motion for summary judgment based upon the argument that the plaintiff failed to request reconsideration of the hourly contract rate by the Chief External Auditor before filing a lawsuit in federal court be and the same is hereby DENIED;

(2) that, based upon Eleventh Amendment immunity, the state defendants' motion for summary judgment be and the same is hereby GRANTED on all claims asserted against the State of Alabama Department of Transportation pursuant to 42 U.S.C. §§ 1981, 1983 and 1985(3);

(3) that, based upon Eleventh Amendment immunity, the state defendants' motion for summary judgment be and the same is hereby GRANTED on all claims under 42 U.S.C. §§ 1981, 1983 and 1985(3) seeking monetary damages from the following defendants in their official capacities: James F. Butts; Ray Bass; T.D. Lenoir; Roy Keen; Roy Hale; Ronald J. Green; and Fob James.[14]

(4) that Governor Fob James' motion for summary judgment on the ground that qualified immunity protects him from liability in his individual capacity under 42 U.S.C. § 1983 be and the same is hereby GRANTED;

(5) that the motion for summary judgment filed by defendants James F. Butts, Ray Bass, T.D. Lenoir, Ronald J. Green, Roy Keen and Roy Hale for qualified immunity in their individual capacities under 42 U.S.C. § 1983 be and the same is hereby DENIED;

(6) that the state defendants' motion for summary judgment based upon their assertion that the plaintiff failed to satisfy all administrative prerequisites before filing suit under Title VII be and the same is hereby DENIED; and

(7) that the plaintiff is DIRECTED to file with the court on or before August 9, 1996, the EEOC right-to-sue letter issued on September 16, 1994, and received by the plaintiff on September 20, 1994.

13. The court again notes that the "independent contractor" vis a vis "employee" distinction could have been raised by the state defendants on motion for summary judgment and may well have been resolved on that submission. However, having failed to do so, the court, as noted, finds that it is too late in the game to do so now.

14. This action shall proceed, however, as to all of the plaintiff's claims asserted under 42 U.S.C. §§ 1981, 1983 and 1985(3) for injunctive and declaratory relief against the state defendants sued in their official capacities.