Cynthia TAYLOR, Plaintiff,

v.

State of ALABAMA, et al., Defendants.

No. Civ.A. 99–D–301–N.

United States District Court,
M.D. Alabama,
Northern Division.

April 19, 2000.

Alice Ann Byrne, Office of the Attorney General, Assistant Attorney General, Montgomery, AL, defendant pro se.

T. Dudley Perry, Jr., Alabama Department of Transportation, Legal Division, Montgomery, AL, defendant pro se.

**1.** Because the State of Alabama, DOT, Bass, Butts, Rushing and Woodham filed a joint Motion To Dismiss, the court will refer to

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court are Defendants State of Alabama, Alabama Department of Transportation ("DOT"), Ray Bass ("Bass"), Jimmy Butts ("Butts"), Dykes Rushing ("Rushing") and Lamar Woodham's ("Woodham") joint Motion To Dismiss [1] ("State Defs.Mot."), together with a Memorandum Brief ("State Defs.Br."), both filed May 21, 1999, and Defendant Charles Harris' ("Harris") Motion To Dismiss ("Harris Mot."), together with a Memorandum Brief ("Harris Br."), both filed May 24, 1999. Plaintiff Cynthia Taylor ("Plaintiff") filed a Response To Defendants' Motions To Dismiss And Memorandum Of Law ("Resp.") on July 2, 1999. On July 9, 1999, the State of Alabama, DOT, Bass, Butts, Rushing and Woodham filed a joint Reply ("State Defs. Reply"). After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that Defendants' Motions are due to be granted in part and denied in part.

## JURISDICTION AND VENUE

The court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights), 42 U.S.C. §§ 2000e to 2000e–17 (Title VII of the Civil Rights Act of 1964, as amended) ("Title VII"), 42 U.S.C. § 1981 (Civil Rights Act of 1866, as amended) (" § 1981"), 42 U.S.C. § 1983 (The Civil Rights Act of 1871, as amended) (" § 1983"), and 28 U.S.C. § 1367 (supplemental jurisdiction). The Parties do not contest personal jurisdiction or venue.

## STANDARD OF REVIEW

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint because the

these Defendants collectively as the "State Defendants."

plaintiff has failed to state a claim upon which relief may be granted. *See* Fed. R.Civ.P. 12(b)(6). A Rule 12(b)(6) motion questions the legal sufficiency of a complaint; therefore, in assessing the merits of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true. *See, e.g., United States v. Gaubert*, 499 U.S. 315, 327, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir.1990). Moreover, all factual allegations are to be construed in the light most favorable to the plaintiff. *See, e.g., Brower v. County of Inyo*, 489 U.S. 593, 598, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989).

Generally, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *In re Johannessen*, 76 F.3d 347, 349 (11th Cir.1996) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). However, in § 1983 actions where government officials sued in their individual capacities have raised the defense of qualified immunity, the Eleventh Circuit has "tightened" the pleading requirements. *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1367 (11th Cir.1998). In *Oladeinde v. City of Birmingham*, the Eleventh Circuit held that in cases where qualified immunity is implicated, "some factual detail is necessary, especially if [the court is] to be able to see that the allegedly violated right was clearly established when the allegedly wrongful acts occurred." 963 F.2d 1481, 1485 (11th Cir.1992). Accordingly, in determining whether a plaintiff has stated a § 1983 claim against a defendant in his or her individual capacity, courts must be "guided both by the regular 12(b)(6) standard and by the heightened pleading requirement." *GJR Investments*, 132 F.3d at 1367.

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

For purposes of considering the Motions To Dismiss filed by Harris and the State Defendants, the court presumes that the allegations in Plaintiff's Complaint are true. In September 1997, Plaintiff began working for the DOT under the supervision of Harris. (Compl.¶¶ 5, 10, 13–14.) On December 31, 1997, "while acting in his supervisory capacity, [Harris] physically assaulted Plaintiff without justification or cause, by physically striking her ... twice and causing her to fall to the floor." (*Id.* ¶ 15.) Although Plaintiff "immediately reported" the assault to the DOT's equal employment officer, Ron Green ("Green"), "[n]o corrective action was taken by the DOT or any of its agents." (*Id.*)

On January 6, 1998, Plaintiff lodged a "formal complaint" with Green "regarding the wrongful actions and continued harassment" by Harris. (*Id.* ¶ 16.) Despite Plaintiff's "formal complaint," Harris continued to subject Plaintiff to "hostile and abusive conduct." (*Id.* ¶ 17.) Thus, on May 5, 1998, Plaintiff "and several other female employees" met with Rushing, Harris' supervisor, "to re-advance" their "concerns" about Harris. (*Id.* ¶¶ 9, 17.) Rushing told them that they would have "to put their grievances in writing, before he would pursue corrective action." (*Id.* ¶ 17.) Per Rushing's directive, on May 8, 1998, Plaintiff and four other female employees, who also were under Harris' supervision, submitted a written complaint to Rushing. (*Id.*) Therein, they "outlined the abuse, harassment, and hostile work environment to which Plaintiff and the others had been subjected by" Harris. (*Id.*) Still, however, "[t]o date, no appreciable corrective action has been taken by" the DOT or any of its agents. (*Id.*)

On May 12, 1998, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). In her EEOC charge, Plaintiff complains of "the assaultive and discriminatory conduct of [ ] Harris and the resulting hostile work environment caused by Harris and the other Defendants." (*Id.* ¶ 18.) As a

result of filing her EEOC charge, Harris "negated a scheduled raise for Plaintiff." (*Id.* ¶ 19.) Plaintiff also "was involuntarily transferred to a lesser position within the [DOT] where she presently remains." (*Id.* ¶ 20.)

Plaintiff filed the instant nine-count Complaint on March 26, 1999, naming the following Defendants in each count: (1) the DOT (*Id.* ¶ 6); (2) Bass, a former Director of the DOT (*Id.* ¶ 7); (3) Butts, also a former Director of the DOT (*Id.* ¶ 8); (4) Rushing (*Id.* ¶ 9); (5) Harris (*Id.* ¶ 10); and (6) Woodham, an "agent" of the DOT, who "is employed in a supervisory position." (*Id.* ¶ 11.)

In Counts 1–3 of her Complaint, Plaintiff brings claims seeking redress under Title VII for gender discrimination, retaliation, and hostile work environment. (*Id.* ¶¶ 23–45.) In Count 4, Plaintiff asserts a Fourteenth Amendment equal protection claim, as enforced by § 1983. (*Id.* ¶¶ 46–40.) In Counts 5, 6 and 8, Plaintiff sets forth state law claims for outrage, negligent infliction of emotional distress, and assault and battery. (*Id.* ¶¶ 51–60, 67–71.) In Count 7, Plaintiff claims that Harris and the State Defendants punished Plaintiff "for exercising her right to petition the Government for redress of grievances" and "conspired to intentionally discriminate" against Plaintiff on the basis of her gender, all in violation of the First Amendment and 42 U.S.C. §§ 1981, 1983 and 1985. (*Id.* ¶¶ 61–66.) In Count 9, Plaintiff asks for attorney's fees and costs. (*Id.* ¶ 72.)

Plaintiff seeks injunctive relief, as well as compensatory damages and punitive damages in the amount of $1,000,000 against Harris and the State Defendants, "jointly and severally," and against Harris, Bass, Butts, Rushing and Woodham, "individually and each in his official capacity." (*Id.* ¶¶ 12, 73.) Plaintiff also demands a jury trial. (*Id.* at 13.)

## DISCUSSION

In their Motions To Dismiss, Harris and the State Defendants challenge the legal sufficiency of each count in Plaintiff's Complaint. For the reasons that follow, the court agrees with some, but not all, of the grounds raised by Harris and the State Defendants. The court addresses each of their arguments separately below.[2]

### I. Title VII And The 180–Day Filing Requirement (Counts 1 and 3)

As to Plaintiff's Title VII claims in Counts 1 and 3 of the Complaint, Harris and the State Defendants argue that Plaintiff is barred from relying on alleged discriminatory events occurring more than 180 days prior to Plaintiff filing her EEOC charge. (Harris Mot. ¶ 7; State Defs.Mot. ¶ 8; Harris Br. at 2–3; State Defs.Br. at 3–4; State Defs. Reply at 1–2.) Because Plaintiff filed her EEOC charge on May 12, 1998 (Compl.¶ 2), Harris and the State Defendants assert that "only incidents which occurred between November 14, 1997 and May 12, 1998 are proper for review." (Harris Br. at 3; State Defs.Br. at 3.) In response, Plaintiff asserts that the unlawful conduct alleged in her Complaint arises out of a "continuous and severe and pervasive course of harassment." (Resp. at 4–5.) The court construes Plaintiff's statement as raising a continuing violation theory. For the reasons that follow, the court agrees with Plaintiff that her Complaint, when read in its entirety, supports a continuing violation theory on her Title VII claims in Counts 1 and 3.

Filing a charge with the EEOC is a prerequisite to a private civil action under Title VII. *See* 42 U.S.C. § 2000e–5(e)(1) (requiring that in Title VII cases aggrieved employees file an EEOC charge which states the date, place, and circumstances of the alleged unlawful employment practice). An EEOC charge "must be filed with the EEOC within 180 days of the date of the act giving rise to the

---

**2.** Because the issues raised by Harris and the State Defendants overlap, the court addresses their Motions To Dismiss and arguments together.

charge." *Calloway v. Partners Nat'l Health Plans,* 986 F.2d 446, 448 (11th Cir. 1993) (citing 42 U.S.C. § 2000e–5(e)). An exception to the 180–day filing requirement arises where the discriminatory acts constitute a "continuing violation." *Patterson v. Augat Wiring Sys., Inc.,* 944 F.Supp. 1509, 1517 (M.D.Ala.1996) (citing *Calloway,* 986 F.2d at 449). Under the continuing violation doctrine,

> [w]here an employee charges an employer with continuously maintaining an illegal employment practice, he may file a valid charge of discrimination based upon that illegal practice until 180 days after the last occurrence of an instance of that practice. However, where the employer engaged in a discrete act of discrimination more than 180 days prior to the filing of a charge with the EEOC by the employee, allegations that the discriminatory act continues to adversely affect the employee or that the employer presently refuses to rectify its past violation will not satisfy the requirement of 42 U.S.C. § 2000e–5(e) that the plaintiff file his charge of discrimination within 180 days of the discriminatory act.

*Gonzalez v. Firestone Tire & Rubber Co.,* 610 F.2d 241, 249 (5th Cir.1980)[3]; *Beavers v. American Cast Iron Pipe Co.,* 975 F.2d 792, 796 (11th Cir.1992).

▮▮ Based on *Gonzalez* and *Beavers,* a plaintiff who relies on the continuing violation doctrine must demonstrate the following two elements: (1) that at least one act occurred within 180 days of the filing of the EEOC charge; and (2) that the alleged discrimination constitutes a series of related acts, as opposed to the occurrence of infrequent or sporadic acts of alleged discrimination. *See id.* For the

reasons to follow, the court finds that Plaintiff has satisfied both elements.

First, Plaintiff's Complaint sets forth that the alleged acts of discrimination continued from September 15, 1997, up to the date Plaintiff filed her EEOC charge, on May 12, 1998. (Compl.¶¶ 13–14.) Thus, Plaintiff has alleged that the unlawful discrimination continued during and throughout the 180 days preceding the filing of her EEOC charge. Based on the foregoing allegations in Plaintiff's Complaint, Harris and the State Defendants appropriately do not dispute, and the court so finds, that Plaintiff satisfies the first element.

Second, the court finds that Plaintiff has alleged that her Title VII claims in Counts 1 and 3 arise from a continuing violation. The court's finding is supported by Plaintiff's allegations that, over an eight-month period, Harris "regularly engaged in threatening, intimidating conduct" and "repeatedly cursed" Plaintiff. (*Id.* at 4, ¶ 14.) Additionally, the court notes that Count 3 of Plaintiff's Complaint alleges a Title VII hostile work environment claim. (*Id.* ¶¶ 38–45.) In hostile work environment claims, "[t]he continuing violation theory is particularly applicable ... because such claims are not based on discreet acts but are supported by plaintiff establishing an ongoing pattern of offensive conduct." *Morrow v. Auburn Univ. at Montgomery,* 973 F.Supp. 1392, 1401 (M.D.Ala.1997). Because the court finds that Plaintiff has alleged a continuing violation, Harris and the State Defendants' Motions To Dismiss Plaintiff's Title VII claims on a timeliness argument are due to be denied.[4]

### II. Failure To State A Claim (Counts 1, 2 and 3)

▮▮ Harris and the State Defendants assert that Plaintiff has failed to state Title

---

**3.** In *Bonner v. City of Prichard,* the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981. *See* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

**4.** If through discovery, the evidence should demonstrate that the alleged violations were not continuing in nature and that the 180–day filing requirement is not satisfied as to all alleged discriminatory acts, Harris and the State Defendants may file a motion for summary judgment at the appropriate time.

VII claims for gender discrimination (Count 1), retaliation (Count 2), and hostile work environment (Count 3). (Harris Mot. ¶¶ 3, 4, 10; Harris Br. at 4–6; State Defs.Mot. ¶¶ 3, 4, 11; State Defs.Br. at 4–7). The court has carefully considered Harris and the State Defendants' arguments and finds that their grounds warrant no discussion. Namely, the court finds that Plaintiff's Complaint is sufficiently detailed to overcome Harris and the State Defendants' Motions To Dismiss. The court emphasizes that the paramount rule in evaluating a motion to dismiss is that a complaint need only contain a "short and plain" statement of the claim advanced by the plaintiff. FED.R.CIV.P. 8. Viewing the Complaint's allegations in their totality, the court finds that Plaintiff has satisfied her burden under Rule 8 of the Federal Rules of Civil Procedure in pleading her claims in Counts 1, 2 and 3. *See Bell v. Eufaula City Bd. of Educ.*, 995 F.Supp. 1377, 1385 (M.D.Ala.1998) (setting forth the elements of proof on a Title VII gender discrimination claim); *Donnellon v. Fruehauf Corp.*, 794 F.2d 598, 600–601 (11th Cir.1986) (setting forth the elements of proof on a Title VII retaliation claim); *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir.1999) (setting forth the elements of proof on a Title VII hostile work environment claim). Therefore, the court finds that Harris and the State Defendants' Motions To Dismiss Counts 1, 2 and 3 for failure to state a claim are due to be denied.

### III. Exhaustion Of Administrative Remedies And Title VII Retaliation Claims (Count 2)

Harris and the State Defendants argue that Plaintiff's retaliation claim in Count 2 must fail because Plaintiff "never amended her EEOC charge or filed a separate charge asserting the alleged retaliation." (State Defs.Mot. ¶ 4; Harris Mot. ¶ 4.) In response, Plaintiff asserts that "it is well settled that a charge of retaliation need not be filed with the [EEOC] in order to be included in [ ] Plaintiff's Complaint."

(Resp. at 7, ¶ 5.) For the following reasons, the court agrees with Plaintiff.

"Before an aggrieved employee may bring a Title VII suit in federal court, he or she must exhaust administrative remedies, which include filing a charge of discrimination with the EEOC." *Dubisar–Dewberry v. Folmar*, 883 F.Supp. 648, 650 (M.D.Ala.1995) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)); *see also Increase Minority Participation by Affirmative Change Today of Northwest Fla., Inc. (IMPACT) v. Firestone*, 893 F.2d 1189, 1196 (11th Cir.1990). However, "it is unnecessary for a plaintiff to exhaust administrative remedies prior to filing suit for a retaliation claim growing out of an earlier charge; a district court has jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court." *Swanson v. Civil Air Patrol*, 37 F.Supp.2d 1312, 1328 (M.D.Ala.1998).

In her Complaint, Plaintiff alleges that she timely filed an EEOC charge on May 12, 1998, received a right-to-sue letter from the EEOC and, thereafter, timely filed this Complaint. (Compl.¶ 2.) Further, Plaintiff alleges that, "[i]n retaliation" for Plaintiff filing her EEOC charge, Harris "subjected Plaintiff to heightened scrutiny," "denied" Plaintiff "a pay raise," and "transferred" Plaintiff "to a lesser position." (*Id.* ¶ 36.) Plaintiff specifically alleges that her EEOC charge is properly before the court and that her retaliation claim stems from the filing of said charge. The court finds that these allegations are sufficient to survive a motion to dismiss. Therefore, the court finds that it was unnecessary for Plaintiff to file a separate EEOC charge for, or amend her existing charge to include, a retaliation claim. *See Swanson*, 37 F.Supp.2d at 1328. Accordingly, the court finds that Harris and the State Defendants' Motions To Dismiss are due to be denied on this ground.

## IV. Individual And Official Capacity Lawsuits Under Title VII (Counts 1, 2 and 3)

■ Harris and the State Defendants assert that Harris, Bass, Butts, Rushing and Woodham cannot be held liable in either their individual or official capacities under Title VII because the "relief granted under Title VII is against the employer, not individual employees." (Harris Mot. ¶ 1; Harris Br. at 4; State Defs.Mot. ¶ 1; State Defs.Br. at 4.) Thus, they assert that Plaintiff's Title VII claims in Counts 1, 2 and 3 against Harris, Bass, Butts, Rushing and Woodham are due to be dismissed. (*Id.*) In response, Plaintiff concedes that her employer, the DOT, "is the only proper Defendant" as to her Title VII claims. (Resp. at 6, ¶¶ 2–4, 6, 7.) Based on Plaintiff's concession, the court finds that Plaintiff's Title VII claims in Counts 1, 2 and 3 against Harris, Bass, Butts, Rushing and Woodham are due to be dismissed. *See Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir.1991) (holding that "individual capacity suits under Title VII are ... inappropriate"); *see also Cross v. Alabama Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1504 (11th Cir. 1995) (affirming the *Busby* holding in an action brought after the 1991 amendments to Title VII and holding that, where a Title VII plaintiff names the employer as a defendant, any of the employer's supervisory officials also named in the complaint may be dismissed from the action).

## V. The Merging Of Plaintiff's § 1981 and § 1983 Claims (Counts 4 and 7)

Harris and the State Defendants assert that, in Counts 4 and 7, Plaintiff's § 1981 claims merge into her § 1983 claims. Thus, they urge the court to dismiss Plaintiff's § 1981 claims. (Harris Br. at 9; State Defs.Br. at 11; State Defs. Reply at 3; Compl. ¶¶ 46–50, 61–66.) Plaintiff objects to the dismissal of her § 1981 claims. (Resp. at 7–8.) For the reasons that follow, the court finds that Harris and the State Defendants' "merging" argument, while correct, does not warrant the dismissal of Plaintiff's § 1981 claims in Counts 4 and 7.

■ Where the defendants are state actors, as here, a plaintiff's § 1981 claims merge into his or her § 1983 claims, and courts treat the claims as "a single claim." *Godby v. Montgomery Co. Bd. of Educ.*, 996 F.Supp. 1390, 1411 (M.D.Ala.1998); *see also Moore v. State of Alabama*, 989 F.Supp. 1412, 1420–21 (M.D.Ala.1997), *aff'd*, 178 F.3d 1303 (11th Cir.1999). As explained by the Eleventh Circuit, "[t]he Supreme Court has ruled that 'the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units.'" *Pearson v. Macon–Bibb County Hosp. Auth.*, 952 F.2d 1274, 1278 n. 3 (11th Cir.1992) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989)).

■ However, the court is not required to, and need not, dismiss Plaintiff's merged § 1981 claims. As explained in *Godby*, "where claims have merged ..., it is not necessary for th[e] court to dismiss them on that basis. The court need only treat them as a single claim." 996 F.Supp. at 1411 n. 14. Thus, because Plaintiff's §§ 1981 and 1983 claims are one and the same, the court will treat them as one claim and henceforth will refer only to § 1983 in analyzing said claims. Based on the foregoing, the court finds that Harris and the State Defendants' Motions To Dismiss Plaintiff's § 1981 claims based on a merging argument are due to be denied.

## VI. Plaintiff's § 1983 And § 1985 Claims Against The State Of Alabama And The DOT (Counts 4 and 7)

The State Defendants assert that Plaintiff's § 1983 claims against the State of Alabama and the DOT are due to be dismissed because neither the State of Alabama nor the DOT are "persons" within

the meaning of § 1983. (State Defs.Mot. ¶ 16; State Defs.Br. at 11.) In response, Plaintiff has not addressed the State Defendants' argument concerning the State of Alabama but has "acknowledge[d]" that the DOT "is not a proper ... defendant to a claim under 42 U.S.C. § 1983." (Resp. at 10.) For the following reasons, the court agrees with the State Defendants.

Section 1983 provides that "[e]very *person*" who, acting under color of state law, violates another's federally protected rights "shall be liable to the party injured." 42 U.S.C. § 1983 (emphasis added). In *Will v. Michigan Dep't of State Police*, the Supreme Court of the United States held that entities with Eleventh Amendment immunity, including states and state agencies, are not "persons" subject to liability under § 1983. 491 U.S. 58, 70–71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *see also Howlett v. Rose*, 496 U.S. 356, 365, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990) ("*Will* established that the State and arms of the State ... are not subject to suit under § 1983 in either federal court or state court."). Under Alabama law, the DOT is an arm of the State. *See Ex Parte Alabama Dep't of Transp.*, —— So.2d ——, ——, 2000 WL 218295, *4 (Ala.2000); *see also* ALA.CODE § 23–1–20 (1975).

Based on *Will* and *Ex Parte Alabama Dep't of Transp.*, the State of Alabama and the DOT, as its agency, are immune from liability on Plaintiff's § 1983 claims because these entities are not "persons" within the meaning of the statute. Accordingly, the court finds that the State Defendants' Motion To Dismiss is due to be granted on Plaintiff's § 1983 claims in Counts 4 and 7 against the State of Alabama and the DOT.

Additionally, while not raised by the State Defendants, the court *sua sponte* finds that Plaintiff's § 1985 claim in Count 7 against the State of Alabama and the DOT is due to be dismissed on the basis of Eleventh Amendment immunity. As explained in *Wright v. Butts*,

Neither the State of Alabama nor Congress has waived Eleventh Amendment immunity under §§ 1981, 1983 or 1985(3) ... *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1524–25 (11th Cir.1990) (Exceptions to Eleventh Amendment immunity do not apply in § 1983 actions.); *Sessions v. Rusk State Hosp.*, 648 F.2d 1066, 1069 (5th Cir. Unit A 1981) (holding that the Eleventh Amendment applies in § 1981 litigation); *Fincher v. Florida Dep't of Labor & Employment Sec. Unemployment Appeals Comm'n*, 798 F.2d 1371, 1372 (11th Cir.1986), *cert. denied*, 479 U.S. 1072, 107 S.Ct. 1262, 94 L.Ed.2d 124 ... (1987) (finding "no express congressional abrogation of the state's Eleventh Amendment immunity with respect to 42 U.S.C. § 1985 actions"). Because the State of Alabama Department of Transportation is an agency of the State of Alabama, the court finds that the Eleventh Amendment protects it from all liability under §§ 1981, 1983 and 1985(3). *See* Ala. Code § 3–1–20 (1975) (creating the State of Alabama Department of Transportation).

953 F.Supp. 1352, 1358 (M.D.Ala.1996). Accordingly, the court finds *sua sponte* that Plaintiff's § 1985 claim in Count 7 asserted against the State of Alabama and the DOT is due to be dismissed.

### VII. Plaintiff's § 1983 Claims Against Harris, Bass, Butts, Rushing And Woodham In Their Official Capacities (Counts 4 and 7)

Harris and the State Defendants argue that Plaintiff's § 1983 claims against Harris, Bass, Butts, Rushing, and Woodham in their official capacities are due to be dismissed "as they are immune under the Eleventh Amendment to claims brought pursuant to § 1983." (Harris Mot. ¶ 14; State Defs.Mot. ¶ 15.) Plaintiff has not addressed this contention. For the following reasons, the court agrees *in part* with Harris and the State Defendants.

First, Harris and the State Defendants are correct that the Eleventh Amendment prohibits Plaintiff's § 1983 action seeking compensatory and punitive damages against Harris, Bass, Butts, Rushing and Woodham sued in their official capacities. *See Wright,* 953 F.Supp. 1352, 1358 (M.D.Ala.1996); (Compl. at 13.) "Lawsuits against a state official in his or her official capacity are suits against the state when 'the state is the real, substantial party in interest.'" *Carr v. City of Florence, Ala.,* 916 F.2d 1521, 1524 (11th Cir.1990). Where a plaintiff asks for monetary damages from a state employee in his or her official capacity, "the state is considered the real party in interest because an award of damages would be paid by the state." *Id.; see also Wright,* 953 F.Supp. at 1358. Based on these principles, the court finds that Harris and the State Defendants' Motions To Dismiss are due to be granted on Plaintiff's § 1983 claims for compensatory and punitive damages against Harris, Bass, Butts, Rushing and Woodham in their official capacities. *See Gorman v. Roberts,* 909 F.Supp. 1493, 1502–03 (M.D.Ala.1995).

However, regarding Plaintiff's request for injunctive relief under § 1983 (*see* Compl. at 13), the court finds that the law dictates a different result. As explained by this court in *Wright,*

> in interpreting the Eleventh Amendment, courts distinguish between suits against a state or state agency and those against state employees. When federal rights are asserted against state employees sued in their official capacities, the Eleventh Amendment prohibits claims for retrospective monetary relief (i.e., compensatory and punitive dam-

ages) paid from the state treasury but not prospective equitable relief (i.e., declaratory and injunctive relief). *See Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 ... (1908) (holding that a plaintiff seeking prospective relief from the state must name as a defendant a state official rather than the state or a state agency directly even though in reality the suit is against the state).

953 F.Supp. at 1358–1359. Based on *Ex parte Young,* as discussed in *Wright,* the court finds that Plaintiff's § 1983 claims seeking injunctive relief against Harris, Bass, Butts, Rushing and Woodham in their official capacities are proper to the extent that these Defendants are still employed by the DOT. Therefore, Harris and the State Defendants' Motions To Dismiss Plaintiff's § 1983 claims on the ground that Plaintiff cannot obtain injunctive relief against Harris, Bass, Butts, Rushing and Woodham in their official capacities are due to be denied.

## VIII. Plaintiff's § 1983 Claims Against Harris, Bass, Butts, Rushing And Woodham In Their Individual Capacities And Qualified Immunity (Counts 4 and 7)

In Counts 4 and 7, Plaintiff brings constitutional claims under the First and Fourteenth amendments, as enforced by § 1983, against Harris, Bass, Butts, Rushing and Woodham in their individual capacities for money damages.[5] (Compl.¶¶ 46–50, 65.) As to these claims, Harris, Bass, Butts, Rushing and Woodham contend that, in their individual capacities, they are immune from damages under the well-established doctrine of qualified immunity and that Plaintiff's

---

**5.** Section 1983 provides that

[e]very person who, under color of a statute ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the

party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights," rather it provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan,* 443 U.S. 137, 144, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979).

§ 1983 claims are due to be dismissed "for failure to meet the heightened pleading standard." (State Defs.Br. at 7–9; Harris Br. at 10–11.)

In response, Plaintiff does not address the defense of qualified immunity or the heightened pleading requirement, but merely asserts that "there is no question" that Harris, Bass, Butts, Rushing and Woodham violated Plaintiff's constitutional rights. (Resp. at 9–10, ¶¶ 15–17.) For the reasons that follow, the court finds that Plaintiff has failed to allege facts sufficient to overcome the defense of qualified immunity. Thus, the court finds that Harris, Bass, Butts, Rushing and Woodham are entitled to qualified immunity on Plaintiff's § 1983 Fourteenth Amendment equal protection claim and First Amendment claim in Counts 4 and 7.

## A. The § 1983 Standard And Qualified Immunity

When the affirmative defense of qualified immunity is raised in a Rule 12(b)(6) motion to dismiss, heightened pleading is required so that the court can evaluate whether "the allegedly violated right was clearly established when the allegedly wrongful acts occurred." *Oladeinde*, 963 F.2d at 1485; *see also* FED. R.CIV.P. 12(b)(6). As noted by the Eleventh Circuit in *GJR Investments*, when a government official moves to dismiss a claim on the basis of qualified immunity, "the qualified immunity inquiry and the Rule 12(b)(6) standard become intertwined." 132 F.3d at 1366; *Wooten v. Campbell*, 49 F.3d 696, 699 (11th Cir.1995). In other words, Harris, Bass, Butts, Rushing and Woodham can "defeat" Plaintiff's § 1983 claims if the Complaint fails " 'to state a claim upon which relief can be granted.' " *Id.* (citing FED.R.CIV.P. 12(b)(6)). Similarly, "[u]nder the qualified immunity defense," these Defendants "are immune from liability if [Plaintiff's Complaint] fails to state a violation of a 'clearly established . . . constitutional right [ ] of which a reasonable person would have known.' " *Wooten*, 49 F.3d at 699 (citing *Harlow*, 457 U.S. at 818, 102 S.Ct. 2727).

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow*, 457 U.S. at 818, 102 S.Ct. 2727; *see also Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir.1988). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

The test for whether a governmental defendant is entitled to qualified immunity from liability in his or her individual capacity involves a two-step analysis. First, the government official must demonstrate that " 'he [or she] was acting within the scope of his [or her] discretionary authority when the allegedly wrongful acts occurred.' " *Rich*, 841 F.2d at 1563–64 (quoting *Zeigler v. Jackson*, 716 F.2d 847, 849 (11th Cir.1983)). As explained by the Eleventh Circuit,

> The inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act. Framed that way, the inquiry is no more than an "untenable" tautology. "Instead, a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties."

*Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir.1998) (internal citations omitted) (quoting *In re Allen*, 106 F.3d 582, 594 (4th Cir.1997)).[6]

Second, if the government official satisfies its burden, the plaintiff must show

---

**6.** Here, based on the face of Plaintiff's Complaint, the court finds that the first prong is satisfied. In her Complaint, Plaintiff alleges that Harris, her supervisor, committed the alleged unlawful acts in his "supervisory capacity" and "within the line and scope of his

that the official's actions " 'violated clearly established constitutional law.' " *Id.* Under this prong, the court must determine whether the applicable law was clearly established at the time of the challenged action. This is determined by reference to decisions of the Supreme Court of the United States, the Court of Appeals for the Eleventh Circuit and, in this case, the Supreme Court of Alabama. *D'Aguanno v. Gallagher,* 50 F.3d 877, 881 n. 6 (11th Cir.1995); *Courson v. McMillian,* 939 F.2d 1479, 1498 n. 32 (11th Cir.1991). The relevant inquiry is "fact specific," *Rodgers v. Horsley,* 39 F.3d 308, 311 (11th Cir.1994), and a plaintiff must point to a controlling case, decided before the events at issue, that establishes a constitutional violation on "materially similar" facts. *Lassiter v. Alabama A & M Univ., Bd. of Trustees,* 28 F.3d 1146, 1150 (11th Cir.1994); *see also Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (holding that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right"). Absent a controlling and factually on-point case, a plaintiff can overcome qualified immunity only when "the official's conduct lies so obviously at the very core" of what the constitutional provision forbids "that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of caselaw." *Smith v. Mattox,* 127 F.3d 1416, 1419 (11th Cir.1997) (citing *United States v. Lanier,* 520 U.S. 259, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997)).

### B. Plaintiff's § 1983 Fourteenth Amendment Equal Protection Claim (Count 4)

In support of her Fourteenth Amendment Equal Protection claim against Har-

ris, Plaintiff alleges as follows: "Plaintiff was subjected to physical assault, discriminatory intimidation, ridicule and insult by [ ] Harris, sufficiently severe and pervasive to alter the conditions of her employment and create an abusive working environment." (Compl.¶ 47.) More specifically, Plaintiff alleges that, between September 1997 to the date Plaintiff filed her EEOC charge in May 1998, Harris "physically assaulted" her "by striking her twice," "regularly engaged in threatening, intimidating conduct," and "repeatedly cursed at" her, all because of her gender. (Compl.¶¶ 13–15.) Further, Plaintiff contends that "[t]he actions of [ ] Harris ... were intentional, willful and taken in the line and scope of his employment ...." (*Id.* ¶ 48.)

Regarding Bass, Butts, Rushing and Woodham, Plaintiff asserts that they "exhibit[ed] deliberate indifference to [Harris'] conduct, in failing/refusing to take meaningful corrective action after receiving complaint[s] from Plaintiff" and in failing to "provide" Harris "with proper training." (*Id.* ¶ 48.)

Under § 1983, the standard for determining liability is different for Harris, who is an alleged participant in the unconstitutional conduct, as compared to Bass, Butts, Rushing and Woodham, whom Plaintiff seeks to hold accountable under a supervisory liability theory. Thus, in determining whether Harris, Bass, Butts, Rushing and Woodham are entitled to qualified immunity, the court will address Plaintiff's Fourteenth Amendment equal protection claim against Harris separate from Plaintiff's claim against Bass, Butts, Rushing and Woodham.

---

employment." (Compl.¶¶ 15, 48.) Further, Plaintiff avers that Bass, Butts, Rushing and Woodham's alleged actions, or rather inactions, were undertaken pursuant to the performance of their duties as Harris' superiors. (*Id.* ¶ 48.) Plaintiff has not contested this first prong. Thus, the court finds that this part of the analysis is undisputed and that, at the

very least, the alleged unlawful conduct of these Defendants falls within the outer parameters of their discretionary duties as government officials. *See Godby,* 996 F.Supp. at 1400 (stating that the determination that an officer was acting within his or her authority is a "low hurdle" to clear).

**1314**

### 1. Harris

First, under the qualified immunity principles, the court must determine whether Plaintiff has alleged a deprivation of a constitutional right. Based on the allegations in Count 4, the court finds that Plaintiff has set forth an intentional sex discrimination claim resulting in a hostile work environment. (Compl.¶¶ 46–50.) A plaintiff clearly has "a constitutional right to be free from unlawful sex discrimination ... in public employment." *Cross*, 49 F.3d at 1507; *see also Nicholson v. Georgia Dep't of Human Resources*, 918 F.2d 145, 148 (11th Cir.1990). Specifically, a plaintiff may bring a sex-based hostile working environment claim under the Fourteenth Amendment's Equal Protection Clause where the following five elements are pleaded: [7] (1) that she belonged to a protected group; (2) that she was subjected to unwelcome sex-based harassment; (3) that the harassment was based upon gender; (4) "that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment"; (5) that the defendant acted under color of law; and (6) that the defendant acted with discriminatory purpose or intent. *Mendoza*, 195 F.3d at 1245; *Watkins v. Bowden*, 105 F.3d 1344, 1355 (11th Cir.1997).

The court finds that Plaintiff has sufficiently alleged the *Mendoza* and *Watkins* elements so as to demonstrate the violation of constitutionally-protected right. She avers that, as a female, Harris under "color of law" subjected Plaintiff to a "physical assault, as well as to discriminatory intimidation, ridicule," "insult," "repeated[ ] curs[ing]," and "threatening, intimidating conduct." (Compl.¶¶ 13–15, 47, 49.) Further, Plaintiff alleges that Harris' harassing conduct was "taken against [ ] Plaintiff on the basis of her gender," was

"intentional," and was "sufficiently severe and pervasive to alter the conditions of her employment and create an abusive working environment." (*Id.* ¶¶ 15, 47, 48.)

Second, the court must determine whether Plaintiff's Fourteenth Amendment equal protection right was clearly established when Harris allegedly engaged in the acts creating the sex-based hostile work environment. As stated, *supra*, the Eleventh Circuit imposes a "heightened pleading requirement" on a plaintiff when confronted with a motion to dismiss on the basis of qualified immunity. *See GJR Inv., Inc.*, 132 F.3d at 1367. The heightened pleading standard requires a complaint to provide "some factual detail ... especially if [the court is] to be able to see that the allegedly violated right was clearly established when the allegedly wrongful acts occurred." *Oladeinde*, 963 F.2d at 1485. As explained in *Helton v. Hawkins*,

> under current Eleventh Circuit law, the plaintiff must come forward with specific facts, concerning each defendant, indicating that each defendant has not only violated a constitutional right, but a clearly established one. Otherwise, when presented with a motion to dismiss, the court must conclude that the defendants, sued in their individual capacities, are entitled to qualified immunity.

12 F.Supp.2d 1276, 1280 (M.D.Ala.1998).

For the following reasons, the court finds that Plaintiff has failed to plead her claim with the requisite factual detail necessary to overcome Harris' defense of qualified immunity. In other words, while Plaintiff may have stated a claim sufficiently to meet the requirements of Rule 8 of the Federal Rules of Civil Procedure, she has not satisfied the heightened pleading requirements applicable to civil rights actions in the Eleventh Circuit where a

---

7. The court notes that, where a plaintiff brings an action against a state official under both Title VII and § 1983, "the substantive elements of proof are the same under both statutes." *Pearson v. Macon–Bibb County Hospital*, 952 F.2d 1274, 1281 (11th Cir. 1992); *see also Richardson v. Leeds Police Dep't*, 71 F.3d 801, 805 (11th Cir.1995).

defendant has raised the defense of qualified immunity.

Other than the December 31, 1997, physical assault, Plaintiff has not alleged with any degree of particularity, the conduct upon which she relies in support of her hostile work environment claim. Plaintiff has alleged only general, conclusory allegations of "discriminatory intimidation, ridicule," "insult," "repeated[ ] curs[ing]," and "threatening, intimidating conduct." (Compl.¶¶ 13–15, 47.) For example, Plaintiff has not cited any specific examples to support her allegation that Harris engaged in "ridicule" and "intimidating conduct" toward her. (*Id.*) Thus, it is impossible for the court to determine whether the acts complained of are the type of acts that would form the basis of a sex-based hostile work environment claim and reach the "minimum level of severity or pervasiveness necessary for harassing conduct to constitute discrimination . . . ." *Mendoza*, 195 F.3d at 1246; *Compare with Scott v. Estes*, 60 F.Supp.2d 1260, 1270 (M.D.Ala.1999). Because Plaintiff's allegations are too conclusory to meet the heightened pleading requirements applicable to civil rights actions, the court finds that Plaintiff has failed to adequately plead a Fourteenth Amendment equal protection claim and, thus, has not alleged a deprivation of a clearly-established constitutional right.[8] *See Young v. SouthTrust Bank, N.A.*, 51 F.Supp.2d 1274, 1284 (M.D.Ala.1999) (finding that the complaint's allegations were "vague, general and conclusory, and wholly insufficient to strip [defendants] of their qualified immunity"). Accordingly, the court finds that Harris' Motion To Dismiss Plaintiff's § 1983 Fourteenth Amendment equal protection claim against him in his individual capacity is due to be granted.

2. Bass, Butts, Rushing and Woodham

Plaintiff contends that Bass, Butts, Rushing and Woodham are liable for Harris' conduct based upon their supervisory roles. In other words, Plaintiff's Complaint does not allege that these Defendants participated or joined in Harris' alleged intentional sex discrimination. Rather, Plaintiff asserts that these individuals had notice of Harris' conduct, yet failed to take any action. (Compl.¶ 48.)

For a supervisor "to be liable under § 1983, [his or] her liability must be based on something more than the theory of respondeat superior." *Braddy v. Florida Dep't of Labor and Employment Security*, 133 F.3d 797, 801 (11th Cir.1998). Under § 1983, supervisory official liability

> "occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so."

*Cross*, 49 F.3d at 1508 (quoting *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990)). A supervisor sued in his or her individual capacity is entitled to qualified immunity unless a reasonable supervisor would have known that his or her actions were unlawful in light of clearly-established law and the information possessed by him or her. *See Greason v. Kemp*, 891 F.2d 829, 836–37 (11th Cir.1990). For the reasons that follow, the court again finds that Plaintiff has failed to meet the heightened pleading requirement, and, thus, Plaintiff has not established that Bass, Butts, Rushing and Woodham violated clearly established law.

Plaintiff's Complaint contains allegations that the "flagrant" and "wrongful actions of [ ] Harris were repeatedly reported to"

---

**8.** Additionally, the court notes that Plaintiff has failed to meet her burden of pointing to case law which "pre-date[s]" Harris' alleged unlawful acts, "involve[s] materially similar facts and 'truly compels' the conclusion that the plaintiff had a right under federal law." *Ensley v. Soper*, 142 F.3d 1402, 1406 (11th Cir.1998) (citing *Lassiter*, 28 F.3d at 1150).

Bass, Butts, Rushing and Woodham "without meaningful response." (Compl.¶¶, 21.) As to Rushing, Harris' supervisor, Plaintiff alleges that, not only was Harris' physical assault of Plaintiff "immediately reported to" him, but on, at least two additional occasions, Plaintiff notified Rushing of Harris' hostile conduct. However, neither Rushing nor any other Defendant ever took action. (*Id.* ¶¶ 15, 17.) Based on these facts and for qualified immunity purposes, the relevant question is: Whether a reasonable person in the same supervisory positions as Bass, Butts, Rushing and Woodham could have concluded that "doing nothing" in response to knowledge of Harris' conduct, as their subordinate, "was lawful." *Cross,* 49 F.3d at 1503. As discussed in the previous section above, the court cannot answer this question based on Plaintiff's conclusory allegations concerning Harris' conduct. In other words, Harris' conduct must be unlawful before Bass, Butts, Rushing and Woodham can be held liable as supervisors. Therefore, the court finds that Plaintiff has failed to plead the violation of a clearly-established right and that the State Defendants' Motion To Dismiss Plaintiff's § 1983 Fourteenth Amendment equal protection claim against Bass, Butts, Rushing and Woodham in their individual capacities is due to be granted.

## C. Plaintiff's § 1983 First Amendment Claim (Count 7)

In Count 7, Plaintiff asserts a First Amendment claim, alleging that Harris and the State Defendants "have unjustly punished Plaintiff for exercising her right to petition the Government for redress of grievances by filing an EEOC complaint." (Compl.¶ 65.) Both Harris and the State Defendants assert that they are entitled to qualified immunity on Plaintiff's First Amendment claim. The State Defendants raise the additional argument that Plaintiff fails to state a First Amendment claim because Plaintiff's EEOC charge "in no way involves a matter of public concern." (State Defs. Reply at 7.) For the reasons that follow, the court finds that Harris, Bass, Butts and Rushing are entitled to qualified immunity on Plaintiff's First Amendment claim.

 Initially, the court notes that the State Defendants are correct that "[i]f only of purely personal concern, the speech is not protected by the First Amendment." *Badia v. City of Miami,* 133 F.3d 1443, 1445 (11th Cir.1998). Courts must examine "the 'content, form, and context ...,'" of a plaintiff's speech "to assess whether it 'may be fairly characterized as constituting speech on a matter of public concern.'" *Id.* at 1443 (quoting *Connick v. Myers,* 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), and *Tindal v. Montgomery County Comm'n,* 32 F.3d 1535, 1539 (11th Cir.1994)). However, the court need not decide whether Plaintiff has properly stated a claim under the First Amendment against Harris, Bass, Butts, Rushing and Woodham. Assuming Plaintiff has stated a claim, Harris, Bass, Butts, Rushing and Woodham are entitled to qualified immunity, because "it is unclear whether [Plaintiff's] complaints were of the kind held to involve a matter of public concern." *Badia,* 133 F.3d at 1445. In other words, Harris, Bass, Butts, Rushing and Woodham "are immune from liability" on the basis of qualified immunity because Plaintiff's Complaint "fails to state a violation of a 'clearly established ... constitutional right[ ] of which a reasonable person would have known.'" *Wooten,* 49 F.3d at 699 (citing *Harlow,* 457 U.S. at 818, 102 S.Ct. 2727); *see also GJR Investments,* 132 F.3d at 1367. "If a plaintiff has not sufficiently alleged a violation of any constitutional right, it is axiomatic that the plaintiff has failed to allege the violation of a 'clearly established' right." *Id.*

As in *Badia,* Plaintiff filed a charge of discrimination seeking redress for "harm that she personally suffered." 133 F.3d at 1445; (Compl.¶ 18.) The Eleventh Circuit "has not decided whether EEOC discrimination complaints which seek redress only for a plaintiff's personal injuries constitute

'speech on a matter of public concern' by the plaintiff solely by virtue of the public fora in which the complaints are presented." *Badia*, 133 F.3d at 1446. Thus, under the qualified immunity analysis, "it is not clearly established in this Circuit that an EEOC charge ... involving an otherwise purely personal matter [is] speech on a matter of public concern that [is] entitled to First Amendment protection." *Id.* at 1446.

Based on *Badia*, the court finds that Harris, Bass, Butts, Rushing and Woodham's alleged "actions did not violate clearly established First Amendment rights, and qualified immunity protects" them from Plaintiff's First Amendment claim brought under § 1983. *Id.* at 1446. Accordingly, Harris and the State Defendants' Motions To Dismiss Plaintiff's § 1983 First Amendment claim against Harris, Bass, Butts, Rushing and Woodham, in their individual capacities, based on the defense of qualified immunity are due to be granted.

### IX. The Intracorporate Conspiracy Doctrine And 42 U.S.C. § 1985(3) (Count 7)

In Count 7, Plaintiff alleges that Harris, Bass, Butts, Rushing and Woodham "have conspired to intentionally discriminate against Plaintiff on the basis of her gender, in violation of ... [§ ] 1985." [9] (Compl.¶ 65.) The State Defendants argue, in part, that "since all of the [D]efendants are employees of [ ]DOT, as a matter of law, they constitute a single entity incapable of forming the alleged conspira-

cy." (State Defs.Mot. ¶¶ 18–19; State Defs. Reply at 4.) The State Defendants' argument is premised on the intracorporate conspiracy doctrine. On the other hand, Plaintiff states that she "has properly presented a claim of conspiracy under 42 U.S.C. § 1985." (Resp. at 11, ¶ 18.) For the following reasons, the court agrees with the State Defendants.[10]

To establish a claim for a § 1985(3) conspiracy, a plaintiff "must show an agreement between 'two or more persons' to deprive him of his civil rights." *Dickerson v. Alachua County Comm'n*, 200 F.3d 761, 767 (11th Cir.2000) (quoting 42 U.S.C. § 1985(3)); *see also Park v. City of Atlanta*, 120 F.3d 1157, 1161 (11th Cir. 1997). Whether Plaintiff has demonstrated a conspiracy between at least two people depends upon the applicability of the intracorporate conspiracy doctrine. Pursuant to the intracorporate conspiracy doctrine,

> a corporation's employees, acting as agents of the corporation, are deemed incapable of conspiring among themselves or with the corporation.... The reasoning behind the intracorporate conspiracy doctrine is that it is not possible for a single legal entity consisting of the corporation and its agents to conspire with itself, just as it is not possible for an individual person to conspire with himself.

*Dickerson*, 200 F.3d at 767. The intracorporate conspiracy doctrine applies "not

---

**9.** The court notes that, as emphasized by the State Defendants, Plaintiff has not designated whether she is pursuing a conspiracy claim under § 1985(1), § 1985(2) or § 1985(3). (State Defs. Reply at 3.) However, based on Plaintiff's allegation in ¶ 65 of her Complaint, it is clear, and the court so finds, that Plaintiff is proceeding under § 1985(3), which prohibits "two or more persons" from "either directly or indirectly" depriving "any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3).

Further, the court notes that, as discussed in Section VI, *supra*, the State of Alabama

and the DOT are no longer Defendants in this count as these two entities are immune from suit under 1985 based on Eleventh Amendment immunity.

**10.** The court notes that Harris also challenged the legal sufficiency of Plaintiff's § 1985 claim, asserting that Plaintiff alleged "no facts" to support her claim. (Harris Br. at 7; Harris Mot. ¶¶ 16–17.) Because Plaintiff's § 1985 claim fails based on the intracorporate conspiracy doctrine, the court need not and declines to address Harris' argument.

only to private corporations but also to public, government entities." *Id.*

In *Dickerson,* the Eleventh Circuit held that the intracorporate conspiracy doctrine barred the plaintiff's § 1985(3) claim alleging a conspiracy to deprive him of civil rights because the alleged members of the conspiracy were all employees of the same public entity, i.e., the Alachua County Corrections Center: The Alachua County Corrections Center "and its employees are considered to constitute a single legal entity that cannot conspire with itself." *Id.* at 761, 768.

■ Here, Plaintiff alleges a conspiracy by DOT employees to deprive Plaintiff of her civil rights guaranteed by federal statues. (Compl.¶ 65.) Based on the holding in *Dickerson,* however, the court finds that the intracorporate conspiracy doctrine bars Plaintiff's § 1985(3) claim. Specifically, under the intracorporate conspiracy doctrine, the court finds that Harris, Bass, Butts, Rushing and Woodham, as agents and employees of the DOT, constitute a "single legal entity" and, thus, are not "capable of conspiring" together. 200 F.3d at 767–68. Therefore, Plaintiff cannot demonstrate that at least two people conspired together, as required to state a § 1985(3) claim. Accordingly, the court finds the State Defendants' Motion To Dismiss Plaintiff's § 1985(3) claim in Count 7 is due to be granted.

### X. Failure To State A Claim Under The Fair Labor Standards Act

Although Plaintiff has not included a specific count in her Complaint alleging a violation of the Fair Labor Standards Act ("FLSA"), Plaintiff's "Jurisdiction and Venue" section of her Complaint contains a reference to the FLSA. (Compl.¶ 1.) Harris and the State Defendants assert that Plaintiff's general reference to the FLSA is insufficient to state a claim for relief. (Harris Mot. ¶ 9; State Defs.Mot. ¶ 10.) In response, Plaintiff "acknowledges" that her Complaint "contains no" FLSA claim. (Resp. at 8, ¶ 11.) Accordingly, based on

Plaintiff's statement, the court finds that Harris and the State Defendants' Motions To Dismiss are due to be granted on the ground that Plaintiff has failed to state a FLSA claim.

### XI. Failure To State A Claim For Negligent Infliction Of Emotional Distress (Count 6)

■ In Count 6, Plaintiff brings a state law claim for "negligent infliction of emotional distress." (Compl.¶¶ 58–60.) The State Defendants assert that this claim is due to be dismissed because "under state law there simply is no cause of action in Alabama for negligent infliction of emotional distress." (State Defs. Reply at 6.) The court agrees. The Supreme Court of Alabama has held: "There is no cause of action for the negligent infliction of emotional distress." *Allen v. Walker,* 569 So.2d 350, 352 (Ala.1990); *see also Gideon v. Norfolk Southern Corp.,* 633 So.2d 453 (Ala.1994). Accordingly, the court finds that the State Defendants' Motion To Dismiss Plaintiff's state law claim for negligent infliction of emotional distress is due to be granted.

### XII. Plaintiff's Outrage (Count 5) And Assault And Battery (Count 8) Claims Against Bass, Butts, Rushing, Woodham

In Counts 5 and 8, Plaintiff alleges state law claims for the tort of outrage, and assault and battery against Bass, Butts, Rushing and Woodham. (Compl.¶¶ 51–57, 67–71.)

Plaintiff predicates these claims on the gender-based hostile work environment allegedly created by Harris and his physical assault of Plaintiff on December 31, 1997. (*Id.*) Plaintiff suggests in her Response that, to the extent any Defendant cannot be held vicariously liable under the doctrine of respondeat superior, her state causes of action are barred. (Resp. at 8, ¶ 9.) In reply, the State Defendants argue that liability based on *respondeat superior* cannot attach to Bass, Butts, Rushing and

Woodham under the facts alleged in Plaintiff's Complaint. (Reply at 5–6.) For the following reasons, the court agrees with the State Defendants.

■ Plaintiff does not allege that either Bass, Butts, Rushing or Woodham personally engaged in any conduct necessary to establish the elements of these state law claims.[11] Plaintiff's contention in her Complaint is that Harris, Bass, Butts, Rushing and Woodham are liable, because they held supervisory positions over Plaintiff, were informed of Harris' alleged conduct and took no action. (Compl.¶¶ 15–17, 51–57, 68–69.) Viewing all factual inferences in the light most favorable to Plaintiff and while not expressly alleged in her Complaint, Plaintiff appears to hold these Defendants liable under a ratification theory. Under certain circumstances, an employer may be held liable for the tortious conduct of its employees on a ratification theory. *See Potts v. BE & K Const. Co.*, 604 So.2d 398, 400 (Ala.1992); *see also Mardis v. Robbins Tire & Rubber Co.*, 669 So.2d 885, 889 (Ala.1995). However, the court is not aware of and the Parties have not cited any authority that liability for an employee's alleged tortious acts may be imputed to an individual supervisor, who merely ratifies the act or acts alleged. Indeed, "ratification can arise only when [as may be the case between an employer and an employee] there is the relationship of principal and agent, either actual or adopted. 'Ratification ... is a doctrine of agency, and, where there is no agency and no attempt to act as agent, there is nothing to which the doctrine can apply.'" *Exchange Security Bank v. King*, 53 Ala.App.

429, 301 So.2d 193, 196 (1974) (citation omitted).

■ Plaintiff does not allege in her Complaint, or argue in brief, that Harris was acting as an agent for either Bass, Butts, Rushing or Woodham. A cause of action for these torts, if any, would have to lie against Plaintiff's employer, the DOT, "which is the true master for vicarious liability purposes." *Hardy v. Town of Hayneville*, 50 F.Supp.2d 1176, 1193 (M.D.Ala.1999); *see also Potts*, 604 So.2d at 400 (setting forth the elements of proof for holding an employer liable for the ratification of an employee's conduct toward a plaintiff). Accordingly, the court finds that the State Defendants' Motion To Dismiss Plaintiff's state law outrage and assault and battery claims against Bass, Butts, Rushing and Woodham is due to be granted.

### XIII. Sovereign Immunity And Plaintiff's State Law Claims Against The State Of Alabama And The DOT (Counts 5 And 8)

The State Defendants argue that the State of Alabama and the DOT are entitled to sovereign immunity under Article I, § 14, of the Constitution of Alabama, 1901, on Plaintiff's state law claims brought in Counts 5 and 8. (State Defs.Br. at 9; State Defs. Reply at 4–5.) Plaintiff has not addressed this contention. For the reasons that follow, the court agrees with the State Defendants.

■ The source of absolute sovereign immunity is Article I, § 14 of the Constitution of Alabama, 1901. Section 14

---

**11.** For example, to establish her claim for battery, Plaintiff must show that she was subjected to "the touching of the person of another in rudeness or anger." *Saville v. Houston County Healthcare Auth.*, 852 F.Supp. 1512, 1542 (M.D.Ala.1994) (citing *Allen v. Walker*, 569 So.2d 350, 351 (Ala.1990)). Plaintiff does not allege that either Bass, Butts, Rushing or Woodham touched her or otherwise committed a battery against her.

To establish the tort of outrage, a plaintiff must establish the following three elements:

"(1) the actor intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from his conduct; (2) the conduct was extreme and outrageous; and (3) the distress was severe." *Moore v. Spiller Associated Furniture, Inc.*, 598 So.2d 835 (Ala.1992) (quoting *Perkins v. Dean*, 570 So.2d 1217, 1219 (Ala.1990)). Again, Plaintiff does not aver that Bass, Butts, Rushing or Woodham personally engaged in any harassment or behavior that would constitute such an intrusion.

provides that "the State of Alabama shall never be made a defendant in any court of law or equity" and "bars any suit against the state of Alabama or its agencies." *Lancaster v. Monroe County*, 116 F.3d 1419, 1430–31 (11th Cir.1997) (citing *Phillips v. Thomas*, 555 So.2d 81, 83 (Ala. 1989)). The Supreme Court of Alabama has expressly held that the State of Alabama and the DOT, as a state agency, are "immune from suit" under Article I, § 14 of the Constitution of Alabama. *Ex Parte Alabama Dep't of Transp.*, —— So.2d at ——, 2000 WL 218295, *4. Based on the foregoing and, in particular, based on *Ex Parte Alabama Dep't of Transp.*, the court finds that the State Defendants' Motion To Dismiss Plaintiff's state law claims in Counts 5 and 8 against the State of Alabama and the DOT is due to be granted.

### XIV. Plaintiff's Outrage (Count 5) And Assault And Battery Claims (Count 8) Against Harris In His Official Capacity

Harris asserts that, in his official capacity, he is entitled to sovereign immunity under state law and Eleventh Amendment immunity under federal law on Plaintiff's remaining state law claims in Counts 5 and 8. (Harris Mot. ¶ 8; Harris Br. at 9.) In response, Plaintiff agrees to a dismissal of her state law claims against Harris in his official capacity. (Resp. at 8, ¶ 9.) Accordingly, the court finds that Plaintiff's state law claims in Counts 5 and 8 against Harris in his official capacity are due to be dismissed.

### XV. Plaintiff's Outrage (Count 5) And Assault And Battery Claims (Count 8) Against Harris In His Individual Capacity

Harris asserts that he is immune from suit on Plaintiff's outrage (Count 5) and assault and battery (Count 8) claims against him in his individual capacity. (Harris Mot. ¶ 8; Harris Br. at 9.) As to Plaintiff's claims for damages (Compl.¶¶ 12, 73), Harris contends that he is entitled to "absolute immunity" under the Alabama doctrine of sovereign immunity. (Harris Br. at 9.) In support of his absolute immunity defense, Harris relies on *Tinney v. Shores*, 77 F.3d 378, 382–83 (11th Cir.1996). (*Id.*) Further, as to Plaintiff's request for injunctive relief (Compl.¶¶ 12, 73), Harris avers that he is immune from suit under the Eleventh Amendment. (*Id.*) In response, Plaintiff argues that her state law causes of action against Harris in his individual capacity are "viable" claims. (Resp. at 8, ¶ 9.) For the following reasons, the court disagrees with Harris that he is entitled to absolute sovereign immunity but agrees that the Eleventh Amendment bars Plaintiff from obtaining injunctive relief against Harris in his individual capacity.

First, the court rejects Harris' argument that he is entitled to absolute sovereign immunity under Alabama law and finds that Harris' reliance on *Tinney, supra*, is misplaced. As explained in *Sheth v. Webster*, 145 F.3d 1231 (11th Cir.1998), *Tinney* involved "the absolute sovereign immunity . . . afforded to certain state constitutional officers, such as sheriffs and deputy sheriffs." *Id.* at 1236 (citing *Tinney*, 77 F.3d at 378.) Here, the sovereign immunity afforded to Harris, as a state employee, is not absolute. In *Ex Parte Alabama Dep't of Transp.*, the Supreme Court of Alabama explained that the doctrine of sovereign immunity

applies to State officers and employees, who enjoy immunity from an action filed against them in either their official or individual capacity if the action is, in substance, one against the State. . . . The immunity enjoyed by State officers is not absolute, however, as we observed in *Phillips v. Thomas*, 555 So.2d 81, 83 (Ala.1989), the protective cloak of immunity sheltering these individuals from tort liability is not impenetrable. For example, § 14 sovereign immunity does not protect State officers and employees under circumstances where a plaintiff alleges that they acted "willfully, maliciously, illegally, fraudulently, in bad

faith, beyond [their] authority, or under a mistaken interpretation of the law," *Phillips,* 555 So.2d at 83.

— So.2d at ——, 2000 WL 218295, *4.

Applying *Ex parte Alabama Dep't of Transp.* to the facts here, the court finds that, as to Plaintiff's damages request, Harris is not entitled to a dismissal of Plaintiff's state law claims against him in his individual capacity. In pleading her state law claims, Plaintiff has expressly alleged that Harris' actions were "deliberate, willful, malicious and without lawful justification." (Compl.¶¶ 52, 70.) Based on *Ex parte Alabama Dep't of Transportion,* the court finds that Plaintiff's allegations are sufficient to bring Harris' actions outside the protection of sovereign immunity. *See Bonner v. Henson,* 693 So.2d 484, 486 (Ala.Civ.App.1997) (holding that the trial court erred in dismissing the plaintiff's fraud claim against university employees on the basis of sovereign immunity where the plaintiff's complaint contained allegations that the university employees made fraudulent representations). Accordingly, Harris' Motion To Dismiss Counts 5 and 8 against him in individual capacity for money damages is due to be denied.

█ Second, as to Plaintiff's state law claims in Counts 5 and 8 against Harris in his individual capacity for injunctive relief, the court finds that he is entitled to Eleventh Amendment immunity. The Supreme Court of the United States has held that federal courts are barred by the Eleventh Amendment from enjoining state officers from violating state law. *See Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 104, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *see also Burch v. Apalachee Community Mental Health Servs.,* 840 F.2d 797, 801 n. 8 (11th Cir.1988). Therefore, based on *Pennhurst,* because Plaintiff seeks to enjoin Harris from violating state

law, he is immune from liability under the Eleventh Amendment. Accordingly, the court finds that Harris' Motion To Dismiss Plaintiff's state law claims in Counts 5 and 8 against Harris in his individual capacity for injunctive relief is due to be granted.

## XVI. *Plaintiff's Claim For Attorney's Fees (Count 9)*

Harris and the State Defendants assert that Plaintiff's claims "for attorney['s] fees are due to be denied as [ ][P]laintiff has failed to state a federal claim upon which relief can be granted." (Harris Mot. ¶ 12; State Defs.Mot. ¶ 13.) In response, Plaintiff asserts that a "prayer for an award of attorney['s] fees is proper." (Resp. at 9, ¶ 13.) The court agrees with Plaintiff.

█ In Count 9, Plaintiff asserts a claim for costs and attorney's fees pursuant to 42 U.S.C. § 2000e–5(k), "as well as under any other applicable legal theory, or statute." (Compl.¶ 72.) Section 2000e–5(k) provides that, in a Title VII action, "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee (including expert fees) as part of the costs." 42 U.S.C. § 2000e–5(k). Because the court has found herein that Plaintiff has alleged viable Title VII claims, Plaintiff would be entitled to attorney's fees under § 2000e–5(k) in the event she prevails at trial on these claims. Accordingly, the court finds that Plaintiff's request for attorney's fees is proper and that Harris and the State Defendants' Motions To Dismiss Plaintiff's request for attorney fees is due to be denied.[12]

## ORDER

Based on the foregoing, it is CONSIDERED and ORDERED that Harris and the State Defendants' Motions To Dismiss be and the same are hereby GRANTED in part and DENIED in part as follows:

---

12. The court notes that it is unnecessary to include a request for attorney fees in a separate count. While it would be more appropriate for Plaintiff to request attorney fees and

costs in the relevant ad damnum clauses of her complaint, her failure to do so is not fatal to her request.

(1) Harris and the State Defendants' Motions To Dismiss be and the same are hereby DENIED on their contention that Plaintiff did not exhaust her Title VII administrative remedies on Counts 1 and 3 as to alleged discriminatory acts occurring 180 days prior to the filing of her EEOC charge.

(2) Harris and the State Defendants' Motions To Dismiss Plaintiff's Title VII claims in Counts 1, 2 and 3 for failure to state a claim be and the same are hereby DENIED.

(3) Harris and the State Defendants' Motions To Dismiss Plaintiff's Title VII retaliation claim (Count 2) for Plaintiff's failure to include said charge in her EEOC complaint be and the same are hereby DENIED.

(4) Harris and the State Defendants' Motions To Dismiss Plaintiff's Title VII claims in Counts 1, 2 and 3 of the Complaint against Harris, Bass, Butts, Rushing and Woodham in their individual and official capacities be and the same are hereby GRANTED and Plaintiff's Title VII claims in Counts 1, 2 and 3 against Harris, Bass, Butts, Rushing and Woodham be and the same are hereby DISMISSED WITH PREJUDICE.

(5) Harris and the State Defendants' Motions To Dismiss Plaintiff's § 1981 claims in Counts 4 and 7 based on a merging argument be and the same are hereby DENIED; however, as detailed herein, Plaintiff § 1981 claims merge into Plaintiff's § 1983 claims and, thus, are treated as a single claim.

(6) The State Defendants' Motion To Dismiss Plaintiff's § 1983 claims in Counts 4 and 7 (which include the merged § 1981 claims) against the State of Alabama and the DOT be and the same is hereby GRANTED and Plaintiff's § 1983 claims in Counts 4 and 7 against the State of Alabama and the DOT be and the same are hereby DISMISSED WITH PREJUDICE.

(7) Harris and the State Defendants' Motions To Dismiss Plaintiff's § 1983 claims in Counts 4 and 7 (which include the merged § 1981 claims) against Harris, Bass, Butts, Rushing and Woodham in their official capacities be and the same are hereby GRANTED to the extent that Plaintiff seeks damages against them and DENIED to the extent that Plaintiff seeks injunctive relief against the individual Defendants who remain employed by the DOT.

(8) Harris and the State Defendants' Motions To Dismiss Plaintiff's § 1983 Fourteenth Amendment equal protection claim in Count 4 (which includes the merged § 1981 claim) against Harris, Bass, Butts, Rushing and Woodham in their individual capacities on the basis of qualified immunity be and the same are hereby GRANTED.

(9) Harris and the State Defendants' Motions To Dismiss Plaintiff's § 1983 First Amendment claim in Count 7 (which includes the merged § 1981 claim) against Harris, Bass, Butts, Rushing and Woodham in their individual capacities on the basis of qualified immunity be and the same are hereby GRANTED.

(10) The State Defendants' Motion To Dismiss Plaintiff's § 1985 claim in Count 7 be and the same is hereby GRANTED and Plaintiff's § 1985 claim in Count 7 be and the same is hereby DISMISSED WITH PREJUDICE.

(11) Harris and the State Defendants' Motions To Dismiss Plaintiff's claim under the Fair Labor Standards Act be and the same are hereby GRANTED and Plaintiff's claim under the Fair Labor Standards Act be and the same is hereby DISMISSED WITH PREJUDICE.

(12) The State Defendants' Motion To Dismiss Plaintiff's state law claim in Count 6 for failure to state a claim be and the same is hereby GRANTED and Plaintiff's state law claim in Count 6 be and the same is hereby DISMISSED WITH PREJUDICE.

(13) The State Defendants' Motion To Dismiss Plaintiff's state law claims in Counts 5 and 8 against Bass, Butts, Rushing and Woodham for failure to state a claim be and the same is hereby GRANTED and Plaintiff's state law claims in Counts 5 and 8 against Bass, Butts, Rushing and Woodham be and the same are hereby DISMISSED WITH PREJUDICE.

(14) The State Defendants' Motion To Dismiss Plaintiff's state law claims in Counts 5 and 8 against the State of Alabama and the DOT on the basis of sovereign immunity be and the same is hereby GRANTED and Plaintiff's state law claims against the State of Alabama and the DOT in Counts 5 and 8 be and the same are hereby DISMISSED WITH PREJUDICE.

(15) Harris' Motion To Dismiss Plaintiff's state law claims in Counts 5 and 8 against him in his official capacity be and the same is hereby GRANTED.

(16) Harris' Motion To Dismiss Plaintiff's state law claims in Counts 5 and 8 against him in his individual capacity be and the same is hereby GRANTED as to Plaintiff's request for injunctive relief and DENIED as to Plaintiff's request for monetary damages.

(17) Harris and the State Defendants' Motions To Dismiss Plaintiff's request for attorney fees in Count 9 be and the same are hereby DENIED.

As discussed in Section VI herein, it is further CONSIDERED and ORDERED that, while not raised by the State Defendants, Plaintiff's § 1985 claim in Count 7 against the State of Alabama and the DOT be and the same is hereby DISMISSED WITH PREJUDICE on the ground that the State of Alabama and the DOT are immune from suit under § 1985 based on Eleventh Amendment immunity.